UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff | ) | Criminal No. SAG-19-CR-0500 |
| | ) | |
| V. | ) | |
| | ) | |
| JONATHAN WILLIAM WALL, | ) | |
|     Defendant | ) | |

DEFENDANT'S MOTION TO CHALLENGE DETENTION ORDER AND
FOR BOND HEARING

NOTICE OF CONFERRAL

Defendant has conferred with the Government and the instant motion is opposed.

---

NOW COMES the Defendant, Jonathan William Wall, by counsel, and states as follows:

RELEVANT FACTS

There is no excuse for leaving a jurisdiction—as did the 25-year old Mr. Wall—but there is context, i.e. being part of a generation for whom it is a matter of faith—a faith supported by the billions generated by private equity firms, ex-law enforcement, tax lawyers, politicians, media personalities, real estate developers, singer-songwriters, scientists, and silicon valley—that marijuana is no longer a criminal matter and that the government's remaining interest in it is as a new American industry producing a rich source of tax revenue.

So that when informed otherwise via federal indictment, that the United States government is still investing our resources into prosecuting and incarcerating Americans for this plant—depriving citizens of their liberty for long periods of time—Mr. Wall had an moment of

1

panic and fled the jurisdiction in the early part of this year. When he realized his mistake, we were in the first wave of the Covid-19 epidemic that greatly limited movement and travel, so that he remained in Guatemala where he performed volunteer work with a nonprofit addressing hunger, helping to buy food and medicine in that beautiful but poor country. When more was known about the virus, Mr. Wall peacefully *self-surrendered* to U.S. authorities in Los Angeles.

Since voluntarily surrendering and being transported across this country, Mr. Wall has been in in the Baltimore City Jail without incident in his home state of Maryland where his family remains hopeful that the young man will be granted bond by this Court, so that he can safely live and work with them in their home on Chesapeake Bay until this federal prosecution is adjudicated.

## PROCEDURAL FACTS

The Indictment in this case was issued on October 22, 2019. The Defendant was arrested after he surrendered to authorities in Los Angeles on June 29, 2020. After a hearing before a Magistrate Judge of the Central District of California on July 7, 2020, the Court issued an Order of Detention, finding that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of any person or the community, and finding that the Defendant has not rebutted by sufficient evidence to the contrary the presumption under 18 U.S.C. §3142(e)(2). A second detention order, an Order of Detention by Agreement, was then entered into by the government and the Defendant, through California counsel, on August 14, 2020, without prejudice to the Defendant's rights to request a hearing to address appropriate conditions of release. Mr. Wall, who is currently in the Baltimore City Jail, now requests that this Honorable Court review those conditions.

## CONSIDERATION OF THE DETENTION ORDER

In keeping with the most fundamental tenet of criminal law – that each accused person is presumed innocent until proven guilty – the Bail Reform Act expressly provides that pretrial release is required "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

If a detention order has been issued, 18 U.S.C. § 3145(b) provides: "If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 Fed.Appx. 46, 48 (4th Cir. 2001) (citation omitted).

18 U.S.C. §3142(e)(1) provides that, if, after holding a hearing, the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." A finding that no condition or combination of conditions will reasonably assure the appearance of the person as required is based on the preponderance of the evidence, *Stewart, supra*, but, to the extent that the judicial officer finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community, that finding "shall be supported by clear and convincing evidence." 18 U.S.C. §3142(f)(2)(B).

"The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. §3142(g) and include: (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Stewart, supra*.

Further, "[i]n light of the COVID-19 pandemic, the Fourth Circuit has also suggested that courts evaluate 'the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i)." *United States v. Sears*, 2020 U.S. Dist. LEXIS 135823 (D. Md. July 28, 2020), *quoting United States v. Creek*, 2020 U.S. App. LEXIS 11971 (4th Cir. Apr. 15, 2020).

In this case, the §3142(g) factors weigh in favor of release.

1. *The nature and circumstances of the offenses charged*.

In this case, the Defendant has been charged with one count of conspiracy to distribute one thousand kilograms or more of marijuana, in violation of 21 U.S.C. §841(b)(1)(A).

At this exact moment, there are respected citizens around the country living in direct violation of this law, save that they are not being held in city jail, but paying their taxes, raising their children, and supporting their communities. Whether one views the War on Drugs as a negligent waste of resources or the best money this country ever spent, the claims regarding the dangerous ability of marijuana to ruin society have been shown false. One can legally purchase the subject matter of the offense charge with a dozen donuts an hour away in our Nation's

Capital. Any argument that the offense is of a nature that demands detention is so attenuated that it is logically bereft of meaning due to its applicability to all situations, i.e., the sugar in donuts may not be deleterious as a general principle, but taken on a large scale sugar is not good for society. This could be argued of anything.

     2.    *The weight of the evidence against the Defendant.*

The indictment contains ten defendants and seven counts. Mr. Wall is cited only in Count One, conspiracy to possess and distribute a *substance containing a detectable amount of marijuana*. [Ex. A "Indictment."] The government further alleges that the amount exceeded more than a kilo of marijuana, a brick-like amount that is on retail display in cannabis dispensaries around the country. Mr. Wall is not charged independently in the Indictment. He was not found with marijuana. He was not arrested with controlled substances. Outside of the money that upon information and belief the government seized from him, the only evidence extant against Mr. Wall is via the mechanism of conspiracy, which speaks to the quantum and quality of proof against this young man.

There are no direct counts against him.

     3.    *The Defendant's history and characteristics, including family ties, character, ties to the community, and criminal history.*

Mr. Wall comes from a great Maryland family. His parents, Mitzi and Jon, are retired and live in Chesapeake Bay. His sister, Emma Kathryn, is a registered nurse who has recently taken a position at Vanderbilt Hospital in Nashville, Tennessee. Mr. Wall himself is from Baltimore where he attended school and has lived most all his life. He has no significant criminal history. He is a thoughtful, caring young man who made a panicked mistake in leaving this Court's

jurisdiction before recognizing and addressing his error. He may have been a fugitive, but he was a fugitive who volunteered at a nonprofit addressing poverty and hunger.

*Assuming arguendo*, that he fled and that this is dispositive. Once he realized his error and it was safe to travel, the young man did not force the government to expend resources to apprehend him, but peacefully self-surrendered to authorities on the West Coast. In other words, knowing that he was not only facing prosecution and potential incarceration, but the hard road of being transported from one side of this country to the other, Mr. Wall assumed responsibility, mitigated his mistake, and evidenced respect for this Court's jurisdiction.

If Mr. Wall were granted bond along with other pre-trial detention safeguards, he would live with his parents at their home on Chesapeake Bay two hours from this Courthouse, where with his family and attorney would engage in all Court processes. Mr. Wall's actions in addressing his moment of panic, along with the afore-described circumstances of pre-trial release, would more than reasonably assure his attendance and presence in this marijuana prosecution.

    4.    *The nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release*.

This prong is virtually non-applicable. Mr. Wall is a peace-loving, good-hearted person who even during the most terrifying and difficult time of his life, volunteered and worked to help others.

We cannot forget that this is a 25-year old being detained and prosecuted for an activity that people around the country are engaging in openly and legally and that the Internal Revenue Service derives billions in taxed revenue. The cause of his current detention may likely not be a

cause for deprivation of any kind in the next decade and is unto itself a source of constitutional question.

WHEREFORE, the Defendant respectfully requests:

A. That this Court review the Order of Detention issued in this case, and, upon its review, revoke or amend that Order to permit the Defendant to be released on bond.

B. That this Court grant a bond hearing.

Respectfully submitted this 6th day of October 6, 2020

*s/Jason Flores-Williams, Esq.*
1851 Bassett St., #509
Denver, CO 80202
Phone: 303-514-4524
Email: Jfw@jfwlaw.net
*Pro Hac Vice Counsel for Defendant Wall*

*s/J Wyndal Gordon*
*J Wyndal Gordon*
*THE LAW OFFICE OF J. WYNDAL GORDON, P.A.*
*20 South Charles Street, Suite 400*
*Baltimore, MD 21201*
*14103324121*
*Fax: 14103473144*
*Email: jwgaattys@aol.com*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, 10/6/20, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Jason Flores-Williams
Jason Flores-Williams