**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | * |
| | *   **Criminal No. SAG-19-0500** |
| **JONATHAN WILLIAM WALL,** | * |
| | * |
| **Defendant.** | * |

**...oOo...**

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR RELEASE**

**RESPONSE**

Now comes the United States of America, by and through its counsel, Robert K. Hur, United States Attorney for the District of Maryland, and Christopher J. Romano, Assistant United States Attorney for the District of Maryland, and hereby responds to the Defendant's request for release on bond pending resolution of his case.

**STATEMENT OF THE CASE**

On October 22, 2019, the Defendant (hereinafter "Jonathan William Wall or Wall") was charged, along with 10 other individuals, with conspiracy to distribute and possess with the intent to distribute marijuana, a Schedule I controlled substance. ECF No. 1. The indictment alleged that the quantity of marijuana attributable to Wall, as a result of his own conduct and the conduct of his co-conspirators reasonably foreseeable to Wall, was more than 1,000 kilograms, in violation of 21 U.S.C. § 846. *Id.*

In order to provide context to this matter the Court should be aware of the chronology both leading up and subsequent to the indictment so as to inform the Court of Wall's conduct.

1

In May of 2019, Wall's then counsel, A. Eduardo Balarezo, Esquire, contacted Government counsel and indicated he represented a target of the investigation, Wall.[1]  Balarezo, on behalf of Wall, requested an opportunity to hold a proffer session with Wall, with the express condition that his client, who was out of state, would not be arrested if he came to Maryland for the proffer.  The Government agreed to that condition.

On May 30, 2019, a proffer agreement was sent to Balarezo and on June 10, 2019, a proffer occurred with Wall and Balarezo.  During the course of the proffer session, Wall was informed that the Government would be seeking to charge him with an offense carrying a 10 year minimum mandatory sentence.  Consistent with the understanding that Wall would not be arrested at the time of the proffer, at the conclusion of the proffer, Wall was free to go and returned to California.  During the proffer, the Government informed Wall that it had received information that he was in possession of a false passport.  Wall acknowledged at one time he had such a document, but had destroyed it.  Prior to Wall leaving the proffer, he was told not to leave the country, which he assured the Government he would not do.

Subsequent to the June 10, 2019 proffer, Wall's then counsel, Balarezo, was informed that there were follow-up questions for Wall, but they could be discussed telephonically, with Wall's counsel participating, given that Wall resided in California.  Before that occurred, however, Balarezo was replaced as Wall's counsel by James Bustamante, in San Francisco, and local Maryland counsel, Joshua Treem.

Subsequently Messrs. Bustamante and Treem requested to meet with Government

---

[1] Balarezo, when he initially contacted Government counsel, identified his client as "J.W." Balarezo was informed that the Government knew "J.W." was in fact Wall.

counsel in the summer of 2019.  At that meeting, at which Wall was not present, Government counsel reiterated that Wall was to be charged.

Once Wall was charged on October 22, 2019, Government counsel contacted both Messrs. Bustamante and Treem to schedule a date for Wall to appear in the District of Maryland for an initial appearance and arraignment.  After repeated unsuccessful attempts to schedule a date that would be convenient to both Wall and his attorneys for his initial appearance and arraignment, Government counsel informed Messrs. Bustamante and Treem that Wall's initial appearance and arraignment would be held on November 15, 2019.  On November 15, 2019, Messrs. Bustamante and Treem appeared in court, but Wall did not.  On the record they informed Chief Magistrate Judge Gesner that they did not know where Wall was.  They asked that the initial appearance hearing be continued, claiming Wall took frequent camping trips and was out of cell phone range and they had difficulty reaching him.  The Government objected and requested an arrest warrant for Wall, which was issued by Chief Magistrate Judge Gesner.

Wall left the country and his whereabouts were unknown until June 29, 2020, when he was arrested at the LAX airport on a flight from Guatemala.  Wall informed the pre-trial services office in Los Angeles that he had been living in Guatemala for 7 months. When Wall was arrested he was in possession of a U.S. passport issued in his name.  An examination of that passport reveals that there was no record of him leaving the United States in the summer or fall of 2019, nor entering Guatemala, until June 29, 2020, thus belying his claim to having resided in Guatemala for 7 months or how he got there and from where.

On July 7, 2020, Wall appeared before United States Magistrate Judge Karen L. Stevenson in the Central District of California and after a contested detention hearing, Wall was

ordered detained.  In finding that Wall should be detained, Magistrate Judge Stevenson found that Wall posed a "serious risk of flight, and that he posed a risk to the safety of other persons or the community because of a history of substance abuse and the nature and seriousness of the allegations in this presumption case."  ECF No. 94-1.

On October 1, 2020, Attorney Bustamante struck his appearance,[2] ECF Nos. 126-7, and his present counsel, Jason Williams, entered his appearance.  On October 6, 2020, Wall, through his present counsel Williams, filed a motion seeking a review of the order of detention.  ECF No. 128.

## **ARGUMENT**

Wall has been charged under 21 U.S.C. § 846, the maximum penalty for which is life imprisonment with a minimum mandatory sentence of 10 years.  Thus, there is a presumption that he should be detained.  18 U.S.C. § 3142(e).

Under 18 U.S.C. § 3142(g) the following factors are relevant to release or detention:

(**1**) the nature and circumstances of the offense charged;

(**2**) the weight of the evidence against the person;

(**3**) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

(**4**) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

2  Joshua Treem, who also at one time represented Wall, struck his appearance on June 22, 2020, ECF 92.

An analysis of these factors requires the continued detention of Wall.

(<u><b>1</b></u>) <u>The Nature and Circumstances of the Offense Charged</u>

Wall has been indicted for trafficking in excess of 1,000 kilograms of marijuana.  The penalty for this, if convicted, is a minimum mandatory sentence of 10 years.  It is a serious offense, notwithstanding Wall's counsel's claim that: "One can legally purchase the subject matter of the offense charge (sic) with a dozen donuts an hour away in our Nation's Capital. Any argument that the offense is of a nature that demands detention is so attenuated that it is logically bereft of meaning due to its applicability to all situations, i.e., the sugar in donuts may not be deleterious as a general principle, but taken on a large scale sugar is not good for society." Wall's memo at 4-5.

The potential penalty Wall faces certainly was a factor as to why he fled.  He wasn't running away for fear of any punishment he might receive for trafficking in sugar donuts.

(<u><b>2</b></u>) <u>The Weight of the Evidence Against the Person.</u>

This case involves cross-country shipments of more than 1,000 kilograms of marijuana by Wall and his co-conspirators.  Walls' counsel's attempt to somehow equate the quantity to "a brick-like amount that is on retail display in cannabis dispensaries," Wall's memo at 5, is but a misguided attempt to minimize Wall's conduct.  The multiple kilograms quantities of drugs, with Walls' direct assistance and participation, were concealed in hidden compartments in vehicles, and crates shipped by unwitting freight forwarders.  Execution of search warrants resulted in seizures in Maryland of kilogram quantities of marijuana, as well as tally sheets showing hundreds  and hundreds of thousands of dollars being transacted for the drugs.  The Government's case against Wall does not rest, contrary to his counsel's suggestion, on simply

5

co-conspirators, but rather on tangible evidence and documents, which will support any testimony should there be a trial.

<b>(3)</b> The History and Characteristics of the Person

The pre-trial services report in California found that Wall had a significant history of drug abuse.  Moreover, he reported he had not worked in several years claiming that he survived off his savings account.  Even if we were to accept that statement as true, the funds in that account were derived not from selling sugar donuts but narcotics.  The fact that he was able to not only flee the United States but remain at large in one or more likely several foreign countries should cause this Court grave concern about Wall's access to undisclosed funds.  Of even greater significance, of course, was/is Wall's ability to abscond and remain at large out of the jurisdiction of the United States in the first place.  While it is not disputed that he "voluntarily" returned to the United States in June of 2020, there is absolutely no guarantee, that given the chance, he may not flee again.  As this Court is well aware, even with an ankle bracelet or some form of location monitoring, defendants have fled the jurisdiction of this Court, even where on those rare occasions this Court has permitted real property to be posted as security.

<b>(4)</b>  The Nature and Seriousness of the Danger to any Person or the <u>Community that would be posed by the Person's Release</u>.

While it is true that Wall has no criminal record, Magistrate Judge Stevenson in ordering Wall be detained made a specific finding that Wall posed a risk to the safety of other persons or the community because of a history of substance abuse.  Moreover, the legislative history of the Bail Reform Act of 1984 makes clear that Congress intended that the "safety of the community" language in Section 3142 was expected to be given a broad construction.  *See* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in 1984* U.S.C.C.A.N. 3182, 3195 ("The reference to

6

safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. *The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."*) (Emphasis added). S. Rep. at 15. The risk that a defendant will continue to sell narcotics was repeatedly cited as an example of a danger to the "safety of any other person or the community." *Id*. at 16, 22-23.

## <u>CONCLUSION</u>

Based upon the foregoing, Wall's request for release should be denied. He has not rebutted the presumption that he is both a risk of flight and a danger to the community.

Respectfully submitted,

Robert K. Hur
United States Attorney
By: _____
     /s/
Christopher J. Romano
Assistant United States Attorney

_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 17, 2020, a copy of the foregoing Response in

Opposition was filed via ECF and served thereby on counsel for the defendant.


By: \_\_\_\_/s/_____
Christopher J. Romano
Assistant United States Attorney